ELIZABETH H. FARAGE, RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO., APPELLANT.—81 S. W. (2d) 344.

Kansas City Court of Appeals. April 1, 1935.

*Jane W. Palmer* and *P. H. Jackson* for respondent.

*Wm. C. Michaels, Robt. E. Colebird* and *Meservey, Michaels, Blackmar, Newkirk & Eager* for appellant.

TRIMBLE, J.—Plaintiff's suit is on an industrial policy of insurance on the life of her husband, Albert C. Farage, issued by defend-

ant under date of March 23, 1932, to the amount of $155, which called for a weekly premium of twenty-five cents. Insured died on May 8, 1932, just forty-six days after the issuance of the policy. He died in the General Hospital to which he had been confined since March 16, 1932, so that he was in the Hospital at the time the policy was delivered.

The suit originated in a justice's court for Kaw Township, Jackson County, Missouri, on June 6, 1932, on a statement alleging the contract of insurance entered into about March 1, 1932; the payment of all premiums, the giving of notice and the furnishing of all necessary proofs of death, and the performance of all obligations required by the contract on plaintiff's part, the vexatious refusal of defendant to pay said policy without any just cause; and then there was a prayer for judgment in the sum of $155 on the policy with ten per cent, or $15.50, penalty and $250 attorney's fees, making a total of $420.50 and for costs.

It having originated in a justice's court, no written pleading was filed by defendant, but after a trial and judgment for plaintiff, the case, in due time and proper form, was appealed to the Circuit Court of Jackson County, Missouri, and assigned to Division No. 5, where it was tried before a jury and a verdict returned for $170.75 with nothing said about penalty or attorney's fees. Defendant thereupon, in due time and form, appealed to this, the appellate court.

The trial and record discloses that the defense is that insured, on the date of the policy, was afflicted with a disease that subsequently caused or contributed to his death. The plaintiff's case was tried on the theory that the provision in the policy in regard to sound health, at the time of the issuance of the policy, was waived by defendant's agent Sapp and defendant's medical examiner.

In a separate paragraph shown plainly on the front page of the policy appears the following:

"This policy shall not take effect unless, upon its date, the insured shall be alive and in sound health and the premium duly paid."

On what seems to be the third page of the policy, is a paragraph, among others relating to "Alterations, Erasures and Waivers," the "Payment of Premiums," "Proof of Claims," etc., appearing as follows:

"*Policy When Void.* This policy shall be void: (1) if the Insured has been rejected for insurance by this or any other company, society or order; or has attended any hospital, or institution of any kind engaged in the care or cure of human health or disease, or has been attended by any physician, within two years before the date hereof, for any serious disease, complaint or operation; or has had before said date any pulmonary disease, cancer, sarcoma, or disease of the heart or kidneys; unless each such rejection, medical and hospital attendance and previous disease is specifically waived by an endorse-

ment in the space for endorsements on Page 4 hereof signed by the Secretary; . . ."

It seems that at the trial in the circuit court and before the introduction of any evidence, plaintiff made a formal offer to return to defendant a check for $2.25 covering the premiums which had been paid on the policy. This check had been delivered by defendant to plaintiff on May 28, 1932, which she had not cashed but had held or retained up to the time of her offer to return it as just stated. Defendant, however, refused to accept the said check, and immediately deposited in court for plaintiff's benefit the sum of $2.75, being the amount of said premiums with interest in accordance with Section 5735, Revised Statutes of Missouri, 1929 (6 Mo. Stat. Ann., p. 4391), in cases of defense based upon misrepresentation in obtaining the policy. Plaintiff refused to accept such sum.

The evidence in behalf of plaintiff, she being her only witness, is to the effect that Albert C. Farage, the insured, was her husband; and the policy introduced was identified by her as the one in suit; that the application for the policy was taken by defendant's agent Sapp, and she was present at the time he obtained it, and heard the conversation between insured and Sapp and heard the former tell Sapp that something was wrong with his stomach, he could not eat, and plaintiff says she told Sapp he was annoyed with hiccoughs which "sort of upset his digestion." But nothing more serious was told him, because she did not know it.

She further testified that the insured, her husband, was a carpenter, but had been working with his son on a truck until about four weeks before he was taken to the General Hospital on the sixteenth of March, 1932. The policy was delivered on the nineteenth of March, 1932, at which time Mr. Sapp who delivered it was told by plaintiff that her husband was in the hospital, and each week thereafter when he called to collect the premium, he asked how he was getting along; and he was there at her home and collected from her the ninth premium on the morning of the day she received a telephone call to come to the hospital. Her husband died at the hospital on May 8, 1932. On cross-examination she testified she knew the cause of her husband's death, that it was cancer, or sometimes called "carcinoma of the esophagus." The proofs of death which were furnished and which she signed, and which were introduced without objection, stated that he died May 8, 1932; that his first complaint of ill health was on February 24, 1932, when he "had attacks of acute indigestion," the cause of his death was carcinoma of the esophagus and that the duration of his illness was "several months before his death." The certificate of his attending physician gave, as the cause of death, "Carcinoma of esophagus. Several months. Contributory cause of death (secondary), metastases to lungs and liver. Duration indefinite . . . 12. When, in your opinion,

was health first impaired? Would not say, at least several months duration prior to adm. to hosp. 3-16-1932." In the physician's certificate signed by Dr. C. H. Wyatt, submitted by plaintiff to defendant, the duration of the disease was given as "probably a year."

It was shown by defendant's evidence that a check for the premiums paid on said policy, namely $2.25, was delivered by it to plaintiff on May 28, 1932, at which time she was told that the company would not recognize the claim, as insured was not in good health at date of issue of the policy; that she was offered the check for the premiums returned and was told she did not have to take it if she didn't want to, but that the company was offering to return the premiums because it was not going to pay the claim; that she took the check for the return premiums and signed the statement, which was introduced in evidence without objection, and no evidence was offered to controvert it, and same is as follows:

"Whereas a dispute has arisen as to the validity of policy numbered 23107026 for the sum of $155 issued by the
John Hancock Mutual Life Insurance.
Company
of Boston, Massachusetts
on the life of Albert C. Farage now deceased, and it is deemed best that the matter be finally settled:

"Now Therefore, I, Elizabeth H. Farage, wife hereby acknowledge to have received from said Company two and 25/100 Dollars ($2.25) being the full amount paid as premiums on said policy, in full settlement and satisfaction, and hereby release and forever discharge said Company from all claim and demand whatever on account of or arising out of or relating to said policy or by reason of premiums paid thereon; and I hereby covenant that I am the sole owner and holder of said policy and entitled to have and receive all moneys payable thereunder, and that I will save said Company harmless from all cost, demand and damage by reason thereof.

"Witness my hand and seal, this 28 day of May, 1932. In presence of:
"x ELIZABETH H. FARAGE.
"LOUIS NIMAN.
"(Seal)

"*State of Mo., County of Jackson, ss.*

"On this 28 day of May, 1932, before me personally appeared Elizabeth H. Farage, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.
"LOUIS NIMAN,
"(Official Seal)              Notary Public."

This was all the evidence in the case.

The policy contained the clear and unequivocal terms that it

should "not take effect unless upon its date the insured shall be alive and *in sound health* and the premium paid." A study of the entire record shows that it is beyond question that insured was not in sound health, and that it was not a mere passing, temporary, indisposition that affected him, but a fatal malady which caused and resulted in his death. The evidence discloses *no issue* whatever on that matter. It is conceded that he was not in good health, but it seems to be contended that the defendant company waived that provision of the policy. Unless there is some basis or ground for waiver the case as presented by what has just been said, affords no room for the action of a jury. [Stephens v. Metropolitan Life Ins. Co., 190 Mo. 673; Benson v. Metropolitan Life Ins. Co., 161 Mo. App. 480; Smiley v. John Hancock Mut. Life Ins. Co., 52 S. W. (2d) 12, 14.] Proofs of death as to cause of such death, unless explained, are conclusive upon a plaintiff. [State ex rel. v. Trimble, 303 Mo. 266, 280.]

As to the contention that the quoted provision of the policy was waived, we desire to say that there is no evidence upon which waiver can be predicated. The action of the agent of defendant on which waiver seems to be claimed, was ineffective, in the first place because he was not an agent of the kind having power to waive; in the next place, the knowledge he is alleged to have had, was not such as would enable plaintiff to assert a waiver, even had he possessed any power to waive.

Since the above was written, it has been learned that the case of Kirk, Admr., v. Metropolitan Life Ins. Co., which was certified by this court to the Supreme Court, has been argued and submitted, and that only recently an opinion has been handed down which has become final, reversing outright a judgment in favor of the plaintiff in said case. Said opinion has not yet appeared in the reported volumes, hence we cannot give the correct citation.

It is clear, however, that the case at bar has nothing in it entitling plaintiff to as much, or to any other or better rights, than had the plaintiff in the Kirk case, except possibly to accept the deposit of premiums, with interest, made in court for her by defendant.

The defendant's demurrer to the evidence at the close of the case should have been sustained.

The judgment is therefore reversed. All concur.